## McCutchon, Howell & Co. *v.* J. B. Wilkinson — M. U. Payne, Intervenor.

The privilege awarded by Art. 3184 of the Code to furnishers of necessary supplies to a plantation, does not extend to a crop entirely cultivated and gathered after the supplies were furnished, so as to take effect after the plantation has been sold.

The privilege under that Article " on the product of the last crop and the crop at present in the ground," must be confined to the crop cultivated, standing or being gathered and taken off at the time the supplies were furnished, it cannot be extended to the crop subsequently planted and sold with the plantation to a third party.

APPEAL from the District Court of Plaquemines, *Rousseau*, J.
*C. De Choiseul*, for plaintiffs.    *C. B. Penrose*, for intervenor and appellant.

Merrick, C. J.   The plaintiffs instituted their action to recover $531 93 as plantation supplies.

They were furnished principally between the first day of September, 1854, and January 1st, 1855, when, as it appears by plaintiffs' account, the items were added up, and they made $506 95, less a credit of $29 02.   In January, two other items were added to the account.   The first on the 12th, being 42½ gallons of solar oil, $42 75, and the second, January 25th, two kegs of nails, $11 25; total, $54.   The suit was commenced on the ninth day of January, 1856, by a sequestration, the plaintiffs claiming a privilege upon the last year's crop and the crop then in the ground.   Under the writ, the Sheriff seized in the sugar-house on the plantation nine hogsheads of sugar.

*Moses U. Payne* having bought the plantation and slaves at Sheriff's sale, on the 7th day of July, 1855, intervened in the suit and claimed the sugar as owner, it having been made upon the plantation, as it must be presumed, after his purchase.

The plaintiffs having proved their demand against the defendant, and the District Court being of opinion that it operated as a privilege on the crop, maintained it against the intervenor also, and decreed a privilege on the property sequestered.

The intervenor appealed.

Although Article 3184 of the Civil Code awards to the furnishers of necessary supplies to a plantation a privilege upon the product of the last crop and the crop *at present in the ground*, there is no reason to suppose that the Legislature intended this privilege to extend to a crop entirely cultivated and gathered after the supplies were furnished and to take effect after the plantation had been sold.

There must be a point at which the old crop terminates and the new one commences.   It is important to ascertain this period.

The law gives a privilege for the salaries of overseers and for debts due for necessary supplies furnished to any farm or plantation, on the product of the last crop and the crop at present in the ground.   C. C. 3184, Acts 1843, p. 44.

In the French text, it is "sur le produit de la dernière récolte et sur les fruits pendans." (See also 2376 C. C.)   What is meant by the crop in the ground and *les fruits pendans?*   Certainly not the roots of the cane which

has not yet been cut, for if that be the case, the overseer who has planted the cane is sure of his privilege on the crops for two or three years to come. For we could, with the same propriety, say that his privilege should extend to the second or third year's crop from the stubble cane, as to say that he has a privilege upon the stubble of the hundred acres of cane cut in November or December of the year of his engagement.

The day before the owner commenced to cut the cane, the overseer's privilege and the privilege of the furnisher of supplies rested on the last year's sugar and molasses in the sugar-house, and that unsold in the hands of the merchant, and the standing crop which he had cultivated. When he had cut fifty acres of cane, and as fast as he continued to cut, did the privilege also extend to the cane roots left in the ground by the operation?

By this arrangement, if the overseer and furnisher of supplies have a privilege only upon two crops for their security, it would shift as fast as the cane should be cut from one crop to the next.

The Legislature, therefore, by the term crop in the ground, did not mean the uncultivated root of the cane in the ground, the vine or the fruit tree to which nothing had been done. The words were more likely used in their natural sense, and the words crop in the ground mean no more than the "fruits pendans." That is, the vine and the root of the cane, when it has been cultivated or has put forth its shoots; the cotton and corn, when the seed has been committed to the earth. Thus crop is defined by Webster to be "That which is gathered; the corn or fruits of the earth collected; harvest. The word includes every species of fruit gathered for man or beast." Also, "*corn or other cultivated plants while growing*, a popular use of the word."

Conceding, therefore, that the solar oil and the nails furnished in January, 1855, were necessary supplies, it is shown that the debtor was not through grinding the cane of 1854 until in February, 1855, and that he did not commence planting and cultivating the new crop until the grinding was finished.

There was therefore, properly speaking, no crop in the ground belonging to the debtor at the time the necessaries were furnished, except the crop of 1854, which the debtor was then taking off. For there were no plants growing, none had been cultivated and there were no new fruits hanging by their roots. The privilege could not extend to the crop subsequently planted and sold with the plantation to a third party.

For the crop of 1855 was not, with reference to the supplies, the *present* crop contemplated by the Code. *Welsh* v. *Shields*, 12 Rob. 527.

It is more reasonable to confine the privilege to the crop cultivated, standing or being gathered, and taken off at the time the supplies were furnished. The tests then are, were the supplies furnished for cultivating or taking off the crop? Had the planter commenced cultivating the new crop?

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court, so far as the same affects the rights of said intervenor *Moses U. Payne*, be avoided and reversed, and that said sequestration be set aside, and that said nine hogsheads of sugar sequestered be restored the said *Moses U. Payne*, who is hereby decreed to be the owner of the same, and that said *Payne* recover the costs of his intervention, the said *McCutchon, Howell & Co.* paying the costs of the appeal.

SPOFFORD, J., dissenting. . I think the Article 3184 of the Civil Code, as amended by the Act of March 23d, 1843, (p. 44) gives the furnisher of neces-

· sary supplies to a farm or plantation, a privilege upon two consecutive crops, where the account (as in this case) extends over a portion of two years.

The account is conceded to be for "plantation supplies;" it runs from September 1st, 1854, to January 25th, 1855.

The sugar seized is of the crop of 1855; that crop grew mainly from ratoons which were in the ground on the 25th January, 1855. It is conceded and perfectly settled by authority, that if there was a privilege on the growing crop in favor of the plaintiffs, at the date of the sale from *Wilkinson* to the intervenor *Payne*, then the sale did not oust the privilege. The sole question, therefore, is, was there, in July, 1855, a privilege on *Wilkinson's* then growing crop for the account sued upon?

I think it was the intention of the law-giver that the plaintiffs, as furnishers of plantation supplies to *Wilkinson*, for the latter part of 1854 and the early part of 1855, should have a privilege for the whole account, both upon the crop of 1854 and the crop of 1855, and that the judgment should be affirmed.

· VOORHIES, J., concurring.